In re EDEN MUSEE AMERICAN CO.

(District Court, S. D. New York. January 14, 1916.)

**1. BANKRUPTCY ⟷259—SALE OF ASSETS—AUTHORIZATION FROM REFEREE—NECESSITY.**

Where, though a referee in bankruptcy had concluded to allow a private sale of the bankrupt's assets and had said that he would authorize a private sale for $4,000, no purchaser had, then appeared and he did not authorize a sale, the trustee had no power to sell the assets for $4,000, especially where he agreed to give the purchaser 20 days in which to remove the property from the leased premises in direct conflict with an understanding between the referee, the landlord and other parties that they were to be removed within 10 days.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 356–358; Dec. Dig. ⟷259.]

**2. BANKRUPTCY ⟷268—SALE OF ASSETS—AUTHORITY OF TRUSTEE—NOTICE.**

A person contracting with a trustee in bankruptcy to purchase the assets of the bankrupt was charged with knowledge of the trustee's lack of authority to sell and that the sale must have the court's approval, especially where he was told that the sale was subject to the approval of the court.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 372–379; Dec. Dig. ⟷268.]

**3. BANKRUPTCY ⟷368—TRUSTEE'S COMMISSIONS—CHARGING WITH EXPENSES.**

Where a trustee in bankruptcy contracted to sell the bankrupt's assets without authority from the referee, and led the purchaser to believe that the approval of the court was required only as to the time of removal of the goods, resulting in the purchaser moving to set aside an order by the referee, instructing the trustee to sell to a higher bidder, the expense of the proceeding will be charged against the trustee's commissions.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ⟷368.]

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the Eden Musee American Company, bankrupt. On motion to disaffirm and set aside an order of the referee. Order sustained, and motion denied.

Maurice L. Shaine, of New York City, for the motion.
Robert D. Murray, of New York City, opposed.

MAYER, District Judge. The motion is to disaffirm and set aside an order made by a referee in bankruptcy, instructing the trustee in bankruptcy to accept the bid of one Karp of $6,500 for certain personal property of the bankrupt and rejecting the offer of one Ament. The record certified up by the referee has been supplemented by a hearing before me, ordered for the purpose of obtaining a full understanding of the whole situation.

The bankrupt's liabilities are about $17,600, as follows (in round numbers): Mr. Hollaman, the trustee, $10,900; Mr. Coleman, the landlord, $4,900 (as his counsel states); and other creditors, $2,800. The property of the bankrupt consisted of wax figures, scenery, costumes, and the like. This property, when scattered and no longer assembled, would have a limited market, and the failure of the Eden Musee, of course, indicated that the day of wax figure exhibitions had passed.

A special meeting of creditors was called for November 18, 1915, to consider whether the trustee should be authorized to sell at public or private sale. The only creditors present were Hollaman and Coleman. This meeting was adjourned to November 26th and then to December 2d.

At these meetings, there was considerable discussion as to the method of sale and the price for which a sale should be authorized. The personal property (excluding good will and the building) had been appraised at close to $30,000, but up to the time of the meeting on December 2d the best bids tentatively offered aggregated $4,000. Mr. Coleman, who seems to have been considerate and indulgent, insisted on having the premises vacated, so that he could erect a building on the land, and was anxious to have a disposition made, so that he would not be subjected to further loss.

Finally the referee concluded to allow a private sale, and said, "You can take your order, then, to sell at private sale for $4,000." To this Mr. Murray, attorney for the trustee, added, "Or better, I understand," and the referee replied, "I know; but you have got to settle it up some time or other." It was then decided to adjourn the meeting until December 7th.

When those present left the meeting, the situation was that the time for removing the goods was an important condition of any private sale, that the referee in effect had said he would authorize a private sale for $4,000, and that no purchaser with a binding offer for that amount or better had as yet appeared. Late that afternoon, Mr. Murray Moss appeared at the Eden Musee and had an interview with Mr. Hollaman, which resulted in an offer by Moss on behalf of one Ament of $4,000, with the proviso that he should have 20 days within which to remove the chattels. Hollaman dictated a receipt, providing

that the sale should be subject to the approval of the court. Moss refused to sign such a receipt, saying that he understood Hollaman to state that the court had authorized him to sell for $4,000, and Hollaman answered, in substance, that that was correct, but that they might have difficulty as to the time within which the property should be removed. The draft receipt was thereupon torn up, and a new receipt drawn up and signed, and Moss paid down $400 to bind the bargain. The receipt as signed read:

"New York, Dec. 3, 1915.

"Received from David Ament, 1472 Madison Ave., four hundred dollars deposit on account of four thousand dollars for the purchase of the chattels of the Eden Musee as per schedule. This money is accepted with the understanding that twenty days is to be allowed the purchasers to take the chattels from the building. Light and heat to be furnished by the trustee. The balance of this amount, $3,600, to be paid Monday morning, December 6th, by certified check, before twelve o'clock, and possession then given to the purchaser.                    Rich G. Hollaman, Trustee."

The parties agreed to meet at the referee's office the following (Saturday) morning. Hollaman testified that he told Moss that the sale must be subject to the approval of the court; but it is apparent that the only outstanding question was the time of the removal of the chattels, and that Hollaman and Moss regarded the price as settled. I am further satisfied that they both thought they could arrange the removal in a manner satisfactory to the referee.

The parties met the next morning at the referee's office; but he was otherwise engaged, and through his clerk told them to return Monday morning. The clerk said that the sale must have the referee's approval, and thereupon Hollaman tendered the $400 back, and this Moss refused to accept.

On Saturday night, December 4th, one Karp heard about these chattels, examined them Sunday, and on Monday he and other bidders appeared at the referee's office. Mr. Coleman's attorney evidently protested, and the following colloquy occurred:

"The Referee: Mr. Hollaman had no business to consent to it. It was stated here exactly what Mr. Coleman's position was, how his contracts were held up; he was losing money every day. The only method we said we would deprive him of the building was either at private sale or an auction on 10 days' notice. You undertake to give him 20 days.

"Mr. Hollaman: I didn't know—

"The Referee: You ought to have known. Did you take advice of your counsel?

"Mr. Hollaman: I did not.

"The Referee: You ought to have done so.

"Mr. Murray: Mr. Hollaman communicated with me the following morning, and I told him that this would have to be approved by the court, and that—

"The Referee: I can't approve of that.

"Mr. Murray: — And that any agreement which anybody may have made with him, they must have known that it should have the approval of the court.

"The Referee: Mr. Coleman has rights as well as other people. I made a short adjournment until Tuesday to see whether you could sell at private sale, if you wanted to sell at private sale. The proper thing to do would be to put the whole thing up at auction. That would give about 10 days' notice. You or somebody has undertaken there to give the purchaser 20 days' time. I cannot approve of it. It is not just at all to Mr. Coleman."

Mr. Coen, the then attorney for Ament, offered to raise the bid and remove the property in 10 days. The referee took further bids, fully heard the parties, and finally concluded to take Karp's offer to pay $6,500 and remove the goods within 10 days. The formal order was signed at the duly adjourned meeting the next day, December 6th.

[1] If, on December 2d, the referee had authorized a sale to Ament, he would undoubtedly have approved such a sale, no matter what higher price was later offered; for it is highly important that an unequivocal verbal statement may be relied upon as implicitly as a formal court order. But that was not the situation. The trustee on December 2d had no power to sell (and especially in this case, where the price was under 75 per cent. of the appraised value), and in fact he made a contract, as the referee pointed out, in direct conflict with the understanding as to the time when the goods were to be removed.

[2] Moss was charged with this knowledge as matter of law, and, in addition, was told that the sale was subject to the approval of the court. Moss was naturally anxious to bind the trustee, and the trustee was anxious not to let an intending purchaser get away. The result is that Moss was led to believe that the approval of the court related only to the time of the removal of the goods, but that was important in the view of the referee; and persons dealing with trustees in the sale of goods must always know that a sale to be effective must have the court's approval.

The difficulty is that the trustee, who is apparently an earnest, forceful business man, accustomed to doing things in his own way, did not realize that bankruptcy estates must be administered in accordance with certain rules and requirements, and that, when papers are drawn and executed without advice of an attorney, trouble is likely to follow. When creditors elect lawyers as trustees, controversies like this rarely occur; but this is not the first time that a layman trustee has made a dispute possible, because he has acted on his own initiative and without consulting counsel.

[3] For the purpose of setting a precedent, the trustee, on his accounting, will be surcharged, against his commissions, with the expense of this proceeding. Receivers and trustees in bankruptcy are thus informed that, where controversies such as this arise through their fault (however good their purposes may be), they and not the estate will pay the bill.

The referee's order is sustained, and the motion denied.